# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MARIA PYUL BROWN, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> GREAT CIRCLE, ET AL., <br><br> Defendants. | Case No. 2:19-cv-04135-NKL |

**ORDER**

Defendant Turner and Elder Enterprises, Inc. d/b/a Johnston Paint and Decorating moves to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6). Doc. 51. Plaintiffs' complaint alleges eight counts, including five counts against Johnston Paint for Conspiracy, Tortious Interference with Parental Relationship, Negligent Infliction of Emotional Distress, Negligent Supervision, and Defamation. Doc. 50. Plaintiffs' claims arise out of an alleged conspiracy between the Defendants to interfere with the parental relationship between Maria Brown and her son, P.A.T., a minor. For the reasons set forth below, the motion to dismiss is GRANTED.

**I.      Alleged Facts**

Plaintiffs allege that Defendant Johnston Paint failed to properly supervise Defendant Joshua Turner, P.A.T.'s father, and that Turner used Johnston Paint's business resources "to influence or otherwise alter investigations and/or reports concerning abuse of Plaintiff P.A.T. to ward custody of the child." Doc. 50 (Second Amended Complaint), ¶¶ 7, 38.g. (alleging use of business resources including phones to discuss Social Services investigation), 44 (alleging use of time, money, and resources). Plaintiffs further allege that Johnston Paint "either did not know,

properly supervise, and/or wanted the abuse allegations of their employee Defendant Joshua Turner deflected to avoid public scrutiny, harm to their business and/or family reputation." Doc. 50, ¶ 44.c. The complaint also asserted that Johnston Paint "knowingly or unknowingly aided other Defendants with their materials and/or resources in their effort to alter the [Social Services] report . . . to refute Plaintiff P.A.T.'s allegations of abuse for their employee Defendant Turner," Doc. 44.e., and that as a result of this assistance, there was interference with Plaintiffs' parent-child relationship. *Id.*

Plaintiffs also allege that Johnston Paint "in coordination, and/or by and through Defendants Turner and Detmer used their professional capacity and connections to create a conflict of interest by obtaining personal services of law enforcement who[] willing[ly] colluded with Defendant Johnston Paint to circumvent the custody court order for their employee, Defendant Joshua Turner." Doc. 50, ¶ 46. Lastly, Plaintiffs allege that Johnston Paint "knowingly, unknowingly, and/or recklessly inflicted severe emotional distress and knew or should have known that such distress would result from their conduct." Doc. 50, ¶ 48.

## II. Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when its allegations rise above the "speculative" or "conceivable," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), and where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Such a complaint will be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*,

514 F.3d 801, 806 (8th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. Count I – Conspiracy

Defendant Johnston Paint argues that Plaintiffs did not sufficiently plead the elements required to prove a claim of conspiracy. In order to state a claim for civil conspiracy under Missouri law a plaintiff must plead that there were "(1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) resulting damages." *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 402–03 (8th Cir. 2017) (citing *Mackey v. Mackey*, 914 S.W.2d 48, 50 (Mo. Ct. App. 1996)).

Plaintiffs' pleadings assert that there were multiple individuals working towards the joint goal of interfering with Social Services investigations to affect the custody determinations which resulted in the claimed harm to Brown's parental relationship with her child. Absent in the pleadings, however, are facts that could establish that there was a meeting of the minds between Johnston Paint and any other alleged conspirators. To show that this element exists, Plaintiffs must show that the alleged conspirators had "a unity of purpose or a common design and understanding." *Rosemann v. St. Louis Bank*, 858 F.3d 488, 500 (8th Cir. 2017) (citation omitted). As to Johnston Paint, Plaintiffs' complaint asserts only that they may or may not have known that its resources were being used to interfere with Plaintiffs' parental relationship. *See, e.g.*, Doc. 50, ¶ 44.e. ("Johnston Paint . . . knowingly or unknowingly aided other Defendants . . . "). That a business's resources were used without its knowledge is evidence of passive involvement and not of active participation done with a unity of purpose, common design, or understanding.

3

Plaintiffs' other allegations against Johnston Paint stated that they acted "in coordination, *and/or* by and through Defendants Turner and Detmer" to create a conflict of interest by obtaining the services of law enforcement who willingly "colluded with Defendant Johnston Paint to circumvent the custody order for . . . Joshua Turner." *Id.*, at ¶ 46 (emphasis added). Though Plaintiffs allege that Johnston Paint may have colluded with Turner and Detmer, Plaintiffs did not specifically plead that there was coordination between the Defendants, nor are there facts that would show there was coordination between these parties. Additionally, the allegations of collusion with law enforcement would relate to a potential separate conspiracy between Johnston Paint and those providing the law enforcement services, a claim that Plaintiffs have not argued.

Even if Plaintiffs were to succeed in establishing that there was a meeting of the minds, Plaintiffs have not alleged facts which could support a finding that the alleged actions taken by Johnston Paint were unlawful. Plaintiffs' pleadings do not state how the alleged creation of a "conflict of interest" rises to the level of being an unlawful act, nor do they state what this conflict was and how it relates to this case. Further, the pleadings' conclusory statement that Johnston Paint may have colluded with law enforcement to "circumvent the custody court order" does not state what activity was taken, how this action circumvented the court order, and whether that activity was unlawful in any way. Without some factual context, the claim is not plausible.

Having not pleaded the facts necessary to show that Johnston Paint was aware of the conspiracy to interfere with Plaintiffs' parental relationship, Plaintiff cannot prove a claim of conspiracy. This claim must be dismissed.

**B. Count II – Tortious Interference with Parental Relationship**

Defendant Johnston Paint argues that a claim of tortious interference with parental relationship fails in a case such as this where there are no specific facts alleged against Defendant and where the claimed interference was not accomplished by the abduction of the child.

Plaintiffs rely on *Kramer v. Leineweber*, 642 S.W.2d 364 (Mo. App. S.D. 1982) to assert this claim against Johnston Paint for their alleged involvement in a conspiracy that resulted in interference of the parental relationship between Brown and her child.[1] But in *Meikle v. Van Biber*, the court expressly limited *Kramer*, and held that "Missouri case law has only allowed recovery in damages for interference with a parent's right to custody of a minor child where it was alleged and proved that the tort committed was accomplished by abduction of the child." *Meikle v. Van Biber*, 745 S.W.2d 714, 715 (Mo. App. W.D. 1987). Plaintiffs supported their claim using only case law consistent with this limitation. See *Kramer v. Leineweber*, 642 S.W.2d 364 (Mo. App. S.D. 1982) (involving abduction of a child); *Kipper v. Vokolek*, 546 S.W.2d 521 (Mo. App. 1977) (applying the cause of action only where a child has been abducted or induced not to return to the custodial parent); *Rosefield v. Rosefield*, 221 Cal. App.2d 431 (Cal. App. 1963) (involving abduction); *Brown v. Brown*, 61 N.W.2d 656 (Mich. 1953) (same).

As above, Plaintiffs have not specifically pleaded facts to support that Johnston Paint interfered with Plaintiffs' parental relationship either directly or through a conspiracy. But even if such interference were established, Plaintiffs have asserted that Brown has been limited in her parental relationship due to an allegedly inappropriate custody order, not through the abduction or

---

1. Plaintiffs cite as additional support Restatement (Second) of Torts § 700. Reliance on this is also inapt as § 700 defines a cause of action for "[o]ne who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent." Restatement (Second) of Torts § 700. As above, Plaintiffs have not pleaded such a claim.

physical removal of the child. Having not alleged specifics facts necessary to plead a plausible claim of tortious interference with parental relationship, this claim must be dismissed.

### C. Count III – Negligent Infliction of Emotional Distress

Defendant Johnston Paint argues that Plaintiffs have not sufficiently pleaded the elements required to prove a claim of negligent infliction of emotional distress. Under Missouri law, to state a claim for intentional infliction of emotional distress a plaintiff must plead (1) a legal duty of the defendant to protect the plaintiff from injury, (2) a breach of that duty, (3) proximate cause, (4) injury to plaintiff, (5) that the defendant "should have realized that his conduct involved an unreasonable risk of causing distress," and (6) that "the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Couzens v. Donohue*, 854 F.3d 508, 518 (8th Cir. 2017) (quoting *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001)).

Plaintiffs allege that Johnston Paint "knowingly, unknowingly, and/or recklessly" caused Plaintiffs severe emotional distress, and that Defendant "knew or should have known" that their conduct would cause this distress. Doc. 50, ¶ 48. Plaintiffs, however, have not specifically identified what the negligent actions taken by Johnston Paint were, nor have they provided support showing that those actions caused distress to Plaintiffs. Instead, the complaint includes only vague language that does not attribute responsibility to any particular defendant. *See e.g.*, Doc. 50, ¶ 71.c. (alleging that Plaintiffs endured "[c]onsistent and/or repeated harassment and/or angry and/or hostile conduct by one or more of the Defendants . . . .").

Even if presumed that Johnston Paint was responsible for some conduct that resulted in Plaintiffs' emotional distress, this claim could not succeed because Plaintiffs did not plead that Defendant owed a duty to Plaintiff. The complaint asserts that Johnston Paint should have known

6

that their actions were likely to breach "duties of civility, fairness, human nature . . . and/or fiduciary duties." Doc. 50, ¶ 71.e. Plaintiffs have not provided any factual basis or legal argument supporting the claim that Johnston Paint owed Plaintiffs a legally cognizable duty. Indeed, Plaintiffs did not oppose these issues in their response to Defendant's motion. Plaintiffs have offered only conclusory statements to support their broad assertion that at least one of the Defendants in this case caused them emotional injuries. Having failed to allege the facts necessary to plead a plausible case of negligent infliction of emotional distress, this claim must be dismissed.

### D. Count IV – Negligent Supervision

Under Missouri law, to state a prima facie case of negligent supervision a plaintiff must plead "(1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property." *Lipp v. Ginger C, L.L.C.*, No. 2:15-CV-04257-NKL, 2016 WL 1583663, at *10 (W.D. Mo. Apr. 19, 2016) (quoting *Cook v. Smith*, 33 S.W.3d 548, 553–54 (Mo. Ct. App. 2000)). The legal duty to supervise is narrowly defined, and a plaintiff must allege "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." *Cook v. Smith*, 33 S.W.3d 548, 553 (Mo. App. W.D. 2000). For negligent supervision claims in the employer-employee context, Missouri adopted the Restatement (Second) of Torts § 317. *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77, 87 (Mo. Ct. App. 2012). According to the Restatement, a claim is established under the following circumstances:

> A master is under the duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel of the master, and (b) the master (i) knows or has reason to know

7

> that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965). Missouri courts interpret these elements to "require evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment." *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo. Ct. App. 2000). Plaintiffs must allege that past acts should have led the employer to foresee the employee's conduct. *Id.*

Plaintiffs assert that Johnston Paint "had a duty to supervise their agents and or employees." Doc. 50, ¶ 74. Plaintiffs further assert that the Defendants "breached this duty to Plaintiffs by repeatedly, consistently and continuously allowing their agents and/or employees to use their resources connected with their employment to gain information and ultimately interfere with investigations concerning the Plaintiff's minor child and the Plaintiff's relationship with her child." Doc. 50, ¶ 75. There are no allegations that it was foreseeable for Johnston Paint that its agents or employees would cause Plaintiffs unreasonable harm, and Plaintiffs have not provided specific factual or legal support for the existence of a plausible duty of care owed by Johnston Paint. Plaintiffs have argued only that Johnston Paint may or may not have known that its resources were allegedly being employed to interfere with Plaintiffs' custody investigations, and that harm had occurred as a result of the actions of Defendants. Without pleading an essential element of a plausible claim for negligent supervision, this claim must also be dismissed.

### E. Count V – Defamation

Defendant argues that Plaintiffs' pleadings fail to state a claim of defamation because they do not identify any specific statements made by Johnston Paint. Under Missouri law, to state a claim for defamation a plaintiff must plead "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6)

damages the plaintiff's reputation." *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1050 (8th Cir. 2012) (quoting *Missouri ex rel. BP Prods. N. Am. Inc. v. Ross*, 163 S.W.3d 922, 929 (Mo. 2005) (en banc)). "[A] claim for defamation will survive a motion to dismiss if the communication alleged in the petition, together with matters of inducement and innuendo alleged in the petition, is capable of a defamatory meaning." *Klein v. Victor*, 903 F. Supp. 1327, 1330 (E.D. Mo. 1995) (citations omitted).

Plaintiffs allege in their complaint only that Defendants "orally communicating false, defamatory, and reckless statements to third-parties, including, but not limited to, Defendants, Defendant's employees, and the public about any allegations against Plaintiff Maria P. Brown." Doc. 50, ¶ 80. Plaintiffs did not identify any specific statements that may have been made against Plaintiff Brown, nor have they provided any legal argument to support the sufficiency of the pleading of this claim. A pleading is insufficient if it provides only "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted). Without any factual support, Plaintiffs have not pleaded a plausible claim of defamation. Accordingly, this claim must also be dismissed.

## IV. Conclusion

For the reasons discussed above, Defendant Johnston Paint's motion to dismiss is GRANTED. The complaint against Johnston Paint is dismissed without prejudice.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: December 4, 2019
Jefferson City, Missouri

9